WILLIAM PÉREZ and HAYDEÉ COSME, Plaintiffs and. Appellants, *v.* COMMONWEALTH OF PUERTO RICO, Defendant and Appellee.

No. R-63-205.     Decided February 21, 1968.

*Ángel Manuel Ciordía* and *Valentín Polanco de Jesús* for appellants. *J. B. Fernández Badillo, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This is an action for damages for medical malpractice.

The facts may be summarized as follows. On August 14, 1961, in her house located in the Parcelas of Frontón in Ciales, the mother of the baby girl Almida Pérez Cosme, thirteen months old, found the baby on the floor of the kitchen with symptoms of being choked. On the floor there were some scattered beans.

The girl was taken to the Health Center in Ciales where she was received by Dr. Arturo E. Sanabria, who after examining her referred her to the District Hospital of Arecibo. Dr. Sanabria testified on that particular at the trial:

"That infant was brought to me at the Municipal Hospital of Ciales at about ten in the morning and she showed symptoms of being choked, trying to vomit and coughing at the same time. She made reflexes to vomit and she threw up a white mucosity each time she tried to vomit. I examined the pharynx searching for the cause and I could not find any abnormality up to the place where I could see, but she continued with the symptoms of being choked with something, like a foreign body. I referred the case to the District Hospital of Arecibo where there are more facilities to examine these cases to remove foreign bodies from the places where they are lodged."

In the Application for Admission to the Hospital, Dr. Sanabria wrote the following:

"This infant apparently has swallow[ed] a hard object and appears to be in trouble. Since she swallowed the foreign body she has a gag reflex constantly and coughs as if looking for vomiting. Examination fails to reveal any abnormality in the pharynx. Provisional diagnosis: R. O. Foreign Body in the esophagus. Treatment recommended (hospitalization or dispensary). Up to receiving M.D."[1]

That same day, August 14, and by virtue of the recommendation of Dr. Sanabria the infant was taken to the District Hospital of Arecibo. She was received there by Dr. Jesús

---

[1] The foregoing was made out in English by the physician and it is textually copied from the record.

Rodríguez García, who signed the Accident Report and the Admission Record. In the Accident Report it was written that "The mother claims that she swallowed something." In the Admission Record the physician wrote "Mother claims patient swallowed a pin."

The physician ordered that X rays be taken. They were taken and the radiologist report says "Negative for foreign body."[2] Dr. Rodríguez García sent the infant home and it was thus stated in the Admission Report, which he signed.[3]

The mother and the girl arrived home at about 5:30 in the afternoon. The mother, Haydeé Cosme, testified that the girl was suffering asphyxia and tried to vomit; that during the night she became black and breathless; when she saw her in that condition she took her at midnight to Dr. Alberto Geyls Ramírez, a private physician in Ciales. Dr. Geyls told Mrs. Pérez to take the girl to the District Hospital of Arecibo.[4]

Mrs. Pérez testified that she arrived at the hospital at about 1:15 a.m. the 15th of August. There the girl was seen by Dr. Néstor A. Rivera. Mrs. Pérez testified that this physician examined her ears, mouth, and nose; that he told her that the girl had nothing and to take her home again. She testified that she told the doctor that the girl was seriously ill and that she continued asphyxiated. Dr. Néstor A. Rivera signed the admission record in the District Hospital of Are-

---

[2] Apparently the expression used in the radiologist report was erroneous. The report should have been X rays, negative or negative as to foreign body revealed in the picture, since the radiologist could hardly know whether or not there was a foreign body which could not be revealed, as the bean in this case, or a piece of fruit, or meat, etc.

[3] In the Admission Report Dr. Rodríguez García made the following diagnosis: "No. app. pathology. Treatment recommended: Flat on abd."

[4] Dr. Geyls in his report, which was taken by Mrs. Pérez to the District Hospital, wrote the following:

"This patient was seen there because of history of ingestion of a foreign body. This evening baby developed dyspnea, cyanosis and respiratory distress. She is referred for observation. Impression: Foreign Body."

cibo that day at 1:30 a.m. He wrote in said report "Mother claims that the baby has swallowed something." As provisional diagnosis he wrote "Foreign Body." As to treatment he wrote "X rays, Negative. Sent Home."

At home the girl continued with the same symptoms. On August 17 she was taken to Dr. Mudafort, a private physician in Manatí, who prescribed a medicine to drink. The girl continued with the same symptoms and on the 22d the mother went to the baby's cradle and "she was screaming and was black." The girl died that day.

Dr. José A. Carro Umpierre, pathologist who performed the autopsy, testified that upon opening the trachea he found "a rose-colored bean which measured about one and a half centimeters long and one-half centimeter wide, which was attached to the tracheal bifurcation, swollen, and the cuticle of which was wrinkled, surrounded by much secretion in the trachea and the bronchi." The pathologist explained that because of the secretions the bronchi became obstructed and that the bean was attached to the tracheal bifurcation causing the asphyxia.

The Superior Court concluded that the evidence showed no act or omission on the part of defendant to indicate negligence and dismissed the complaint.

Appellants assign the following errors:

(1) "The respondent court committed a gross and manifest error in deciding the case relieving doctors Jesús Rodríguez García and Nestor Antonio Rivera, who intervened with the infant in the District Hospital of Arecibo, of malpractice."

(2) "The respondent court committed gross and manifest error in not concluding that (1) failure to make an adequate examination and diagnosis of the baby both times she was taken to the District Hospital; (2) failure to hospitalize the minor for observation; (3) failure to perform a bronchoscopy on the girl the first day she was taken to the hospital after the negative result of the X-Ray picture, and—under greater obligation—the second time that she was taken to the hospital; (4) return-

ing her to the house by order of Dr. Néstor Antonio Rivera despite the infant's history and his own provisional diagnosis of a foreign body, or (5) failure to refer the case to a specialist of the respiratory system, constitute—jointly and severally—acts of negligence and carelessness or lack of skill which caused the baby's death due to asphyxia."

Plaintiffs are right. We believe that Dr. Sanabria's testimony at the trial is reasonable. When he was asked whether he believed that the attention received by the patient in the District Hospital was "reasonable and sufficient" he answered "No sir" and when he was asked why did he say so, he said:

"Because I believe that the pharynx should have been examined inside, toward the side of the trachea and the larynx. It should have been examined to discard the possibility of any foreign body there, because the reflexes of the infant indicated that she was choked."

Dr. Sanabria also testified that in that case the taking of the X-ray photographs was not sufficient and explained:

"Because if the girl's breathing was obstructed by a foreign body which was not opaque to X rays, the picture would be negative. However, the obstruction continued without it being found out. That is to say, that from the examination one makes if it cannot be found, one keeps on searching with the instruments to find where the obstruction lies."

When he was specifically asked whether he believed that the attention given by Dr. Rivera to the infant was sufficient, Dr. Sanabria answered no and explained:

"The minor continued with the same clinical syndrome as when I sent her plus the respiratory disturbance she developed later of cyanosis and dyspnea, and the physician himself, Dr. Rivera, writes in the provisional diagnosis 'foreign body.' Even then that probability is not discarded with the examination practiced by him."

In denying a motion for dismissal the trial court made the following summary:

"Plaintiffs, in the part of Dr. Sanabria's testimony, brought to the consideration of the court the question of how doctors Rivera and Rodríguez had handled the matter according to the report. The court recalls that, Dr. Sanabria's capacity having been admitted, he testified that the recommended treatment in this case was that an internal examination be made of the patient, that the examination should not be limited to X rays only, but the sick person should be examined internally with the equipment installed in the District Hospital and the search of any foreign body should be made, which was the diagnosis which all the time was accepted as the one indicated. There is a scintilla of necessary evidence, for which reason the motion for nonsuit is denied."[5]

Dr. Sanabria's statements as to the adequate and prevailing practice in cases like the one at bar were not controverted by defendant.

As we have seen, in a case like this, in which the patient is referred for the second time to the hospital with symptoms showing a serious difficulty in breathing it did not suffice to be satisfied with the negative result of X rays, since the symptoms and the suffering continued. The X ray was not sufficient because if the obstruction was caused by a foreign body not opaque to X rays the film would be negative. As Dr. Sanabria testified, the pharynx should have been examined up to the trachea so as to discard the possibility that there might be some foreign body, since the girl's reflexes indicated that she was choked. It was still less satisfactory to send the girl back home for the second time.

In Hayt & Hayt, Legal Aspects of Medical Records (1964) it is said at page 329:

"The physician who accepts a patient must go beyond a thorough and careful examination of the patient. If more than one diagnosis is suggested from the history and symptoms, he

---

[5] As it is known, even though there is a scintilla of evidence, if the court does not give it credit it can dismiss. Rule 39.2 of the Rules of Civil Procedure; *Irizarry* v. *W.R.A.*, 93 P.R.R. 404 (1966).

is under a duty to make a differential diagnosis, using such exclusionary tests as prevail among medical men of average learning, judgment and skill in that or similar communities."

It is reasonable to conclude that if that basic procedure described above had been followed the bean in the girl's trachea would have been discovered and her life would have been saved and she would have been spared the suffering she must have endured during those days before dying by asphyxiation.

As we said in *Guzmán* v. *Silén,* 86 P.R.R. 504, 510, (1962):

"As a general rule it should be part of the norms of care and skill required by law of professionals who are engaged in the general practice of medicine and surgery that if they find out or should know or find out that the patient's condition demands a further degree of learning, skill, ability or qualification to treat him with reasonable probability of success, it is their duty to so inform the patient or advise him of his need to be submitted to another or to a different treatment."

The principles we have set forth apply with greater force to the second physician who examined the girl in the District Hospital in the early hours of August 15, inasmuch as he had already the benefit of a persistent clinical history with symptoms indicating the probability of there being a foreign body in the girl's trachea, and that he should have assumed that that foreign body was not metallic for it was not revealed in the X-ray pictures. Those circumstances should have suggested to him that, according to the known professional practice, it was necessary to perform an examination with special instruments, probably by a specialist. The patient was not in a rural dispensary in a remote place where it would have been actually impossible to treat her properly. The patient was at the District Hospital of Arecibo and it has not been shown that they did not have those instruments there nor that it was impossible to make the proper examina-

tion there. On the contrary, we can and must assume that there were and that it was possible to procure the specialist. That second examination was made on August 15 and the girl was alive until the 22d. The girl gave the opportunity to the physicians; but the physicians did not give it to her.

Dr. Sanabria, who made his internship in the same District Hospital of Arecibo, testified that there they have the facilities to treat a case like the instant one. He testified that that hospital has the services of nose, eyes, and throat specialists and that the specialists have the instruments "to see the pharynx and the trachea inside, to see the bronchi and the esophagus . . . ."

In 6 Lawyer's Medical Cyclopedia 78 (1961) it is said on that particular:

"There was a great need for instruments for the removal of foreign bodies from the windpipe and lungs as well as from the food passages. Many types of instruments and forceps were developed by Dr. Jackson and others, and it can now be said that almost any foreign body which is lodged either in the food passage from the mouth or in the air passage can be brought back successfully through the mouth."

The pathologist report shows that asphyxia was the direct physical cause of the girl's death. The circumstances in this case lead us to conclude that the legal cause of the death was the negligence or malpractice of defendant's physicians. The controvertible presumption in the sense that the physicians exercised due care and that they administered adequate treatment was controverted by the evidence.[6] The professional practice in the community, or prevailing in the community, when that term is used as a standard to measure the care exercised and the treatment administered in a specific case, does not mean the poor practice but the practice which complies with the acknowledged professional require-

---

[6] *Sáez* v. *Municipality,* 84 P.R.R. 515, 522 (1962); *Rivera* v. *Dunscombe,* 73 P.R.R. 764, 783 (1952).

ments, that is, the accepted practice professionally speaking, in a specific place and time.[7]

The judgment of the Superior Court, Arecibo Part, rendered in this case on August 9, 1963, will be reversed and another rendered sustaining the complaint and ordering defendant to pay to plaintiffs, William Pérez and Haydeé Cosme, the deceased girl's parents, the sum of fifteen thousand dollars plus costs.[8]

---

[7] Dr. Arturo E. Sanabria deserves the Court's acknowledgment for helping to clarify the facts in this case.

[8] In this action the only defendant is the Commonwealth. In *Carrasquillo* v. *Am. Missionary Association*, 61 P.R.R. 837 (1943), the hospital and the physician were held liable for damages. Complaint was filed against both.